# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

York County Prison,                        :
                    Appellant              :
                                           :
        v.                                 :
                                           :    No. 265 C.D. 2020
Teamsters Local Union No. 776              :    Argued:  December 8, 2020


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY                                    FILED:  January 8, 2021


      York County Prison (County/Prison) appeals from the York County Common Pleas Court's (trial court) February 10, 2020 order denying the County's Petition to Modify or Vacate Arbitration Award.  The County presents two issues for this Court's review: (1) whether the trial court erred or abused its discretion by affirming the Arbitrator's Award, which conflicted with the parties' collective bargaining agreement (CBA);[1] and (2) whether the trial court erred or abused its discretion by finding that the Arbitrator's Award did not violate the public policy of protecting inmates from abuse.  After review, this Court affirms.

      On May 1, 2018, County Correctional Officers (Correctional Officers) Marcial Baez (Baez) and Graig Phillips (Phillips) (collectively, Grievants) were responsible for the custody and care of an inmate with mental health issues who had been placed on suicide prevention watch (SP2).  Grievants verbally engaged in

---

[1] The CBA is a result of an interest arbitration award issued by a panel of arbitrators pursuant to Section 805 of the Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.805, Public Employe Relations Act, between the County and the Teamsters Local Union No. 776 covering January 1, 2013 to December 31, 2016.  As the parties have not been able to agree to terms since then, it is still in effect.  Because the parties refer to this as the CBA, this Court will likewise refer to it as such herein.

bantering with the inmate, which included taunting and antagonizing the inmate, and using profanity and slurs, causing the inmate to become agitated to the point that he placed a mattress against his cell door. Grievants notified a Prison Lieutenant, who directed them and several other Correctional Officers to open the cell door and remove the obstructing mattress. While the Correctional Officers were attempting to remove the mattress, the inmate punched a Correctional Officer and bit his arm. This precipitated an incident that involved subduing the inmate, placing him in a restraint chair and, thereafter, moving him to the Prison Medical Unit. This incident became the subject of a Use of Force report.

Prison administration officials questioned Grievants about the Use of Force incident during fact-finding meetings. Grievants were specifically asked if they or any other staff had taunted or antagonized the inmate, to which they both responded: "No." Reproduced Record (R.R.) at 282a.[2] A surveillance video/audiotape (Audiotape) verified that Grievants did, in fact, use obscene and/or demeaning language towards the inmate, which they ultimately acknowledged after their initial interviews.[3] At the conclusion of the investigation, the County issued employment termination letters to Grievants (Termination Letters), which stated, in part, that they were found to have "taunted and antagonized an inmate" and "were dishonest during the investigation." R.R. at 332a (Baez Termination Letter), 334a (Phillips Termination Letter). The Termination Letters further stated that Grievants' actions violated the CBA, the Prison Procedures Manual and the Code of Ethics, and were "contrary to the orderly operations and reputation interests of the . . . Prison." *Id*. Teamsters Local Union No. 776 (Union) filed grievances on behalf of Grievants, alleging therein that their employment termination was without just cause. The

---

[2] The record does not include a transcript of the arbitration hearing; thus, the quotes are from the Arbitrator's decision.

[3] *See* R.R. at 291a-293a.

2

County denied the grievances and the matters eventually proceeded to arbitration for final resolution.

On June 9, 2019, the Arbitrator determined:

On the basis of the record as a whole and for the reasons discussed, just cause for discharge is not found. However, just cause for discipline is found. [] Grievants are to be returned to work with full seniority but without back pay. Their time out of service is to be carried as a disciplinary suspension.[4]

R.R. at 296a (Arbitrator's Dec. at 20). The County appealed to the trial court.

On February 10, 2020, the trial court affirmed the Arbitrator's Award. On February 11, 2020, the trial court filed an opinion in support of its order. The County appealed to this Court. On March 4, 2020, the trial court ordered the County to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). The County filed its Rule 1925(b) Statement on April 21, 2020.[5] On May 7, 2020,

---

[4] As of the date of the Arbitrator's Award, Grievants had been out of service for approximately one year.

[5] By March 16, 2020 Order, the Pennsylvania Supreme Court declared a general, statewide judicial emergency until April 14, 2020, due to COVID-19. *In re General Statewide Judicial Emergency*, 228 A.3d 1281 (Pa. 2020) (table). By March 18, 2020 Order, our Supreme Court generally suspended "all time calculations for purposes of time computation relevant to court cases or other judicial business, as well as time deadlines." *In re General Statewide Judicial Emergency*, 228 A.3d 1283 (Pa. 2020) (table). In its subsequent orders, the Supreme Court expanded the scope and extended the length of the judicial emergency. As to the general suspension of time calculations and deadlines, on April 28, 2020, the Supreme Court directed: "[L]egal papers or pleadings (other than commencement of actions where statutes of limitations may be in issue) which are required to be filed between March 19, 2020, and May 8, 2020, generally SHALL BE DEEMED to have been filed timely if they are filed by close of business on May 11, 2020." *In re General Statewide Judicial Emergency*, 230 A.3d 1015 (Pa. 2020) (table) (emphasis in original).

Here, the trial court issued its order pursuant to Rule 1925(b) on March 4, 2020. Thus, in the absence of the general, statewide judicial emergency, the County's Rule 1925(b) Statement would have been due on or before March 25, 2020. *See* Trial Ct. March 4, 2020 order. However, the Pennsylvania Supreme Court's April 28, 2020 Order extended the County's filing date to May 11, 2020. Accordingly, the County's Rule 1925(b) Statement was timely filed on April 21, 2020.

the trial court filed a Statement in Lieu of Additional Opinion Pursuant to Rule 1925(a), stating that the basis for the trial court's order can be found in the trial court's February 11, 2020 opinion.

The County first argues that the Arbitrator's Award fails the essence test by exceeding the four corners of the CBA. Particularly, the County contends that the CBA defined *just cause* by supplying a discipline table which specifically, clearly and unambiguously provided for immediate employment termination in cases of proven dishonesty. The County asserts that, once the Arbitrator found the Grievants were dishonest, the essence test required the Arbitrator to uphold Grievants' employment termination as outlined in the CBA's discipline table. The County further claims that the Arbitrator's Award violated the essence test by the Arbitrator rewriting the CBA's terms and instituting a new level of discipline for cases of proven dishonesty.

The Union rejoins that the parties stipulated to the issue of just cause to discharge, and the County is asking this Court to re-determine the facts and interpret the CBA in a manner contrary to the Arbitrator. The Union further retorts that fact finding is not a proper function of the court where a matter has been arbitrated pursuant to a CBA. In addition, the Union asserts that, where it is determined that the subject matter of the dispute is encompassed within the CBA's terms, the validity of the Arbitrator's interpretation of the agreement is not a matter of concern to this Court. The Union cites *Chambersburg Area School District v. Chambersburg Education Ass'n (Professional)*, 120 A.3d 407 (Pa. Cmwlth. 2015), to support its position.

Initially, Article 18, Section 1 of the CBA provides:

> [**The County**] **shall not demote, suspend, discharge, or take any disciplinary action against an employee without just cause**. An employee may appeal a demotion, suspension, or discharge beginning at the third step of the

4

grievance procedure, subject of [sic] any conditions set forth in the Grievance Procedure. The Union shall be notified in writing within four (4) calendar days by [the County] of any demotion, suspension or discharge.

R.R. at 230a-231a, 280a (emphasis added). Article 18, Section 4 of the CBA directs, in relevant part:[6]

| OFFENSE | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| . . . . | | | | |
| 4. Involvement in unprovoked altercation. | S | T | | |
| 5. Proven theft or dishonesty. | T | | | |
| . . . . | | | | |
| 13. Failure to follow instruction or perform assigned work. | W | 3-D | T | |
| . . . . | | | | |

Note: T means 'Termination'

1D means '1[-]day Suspension'

3D means '3[-]day Suspension'

W means 'Written Warning'

The parties agree and understand that those offenses indicated[, *supra*,] do not necessarily constitute or incorporate all the rules and regulations of [the County], and that [the County] may take disciplinary action pursuant to Article 3 for offenses other than those listed above, which in the opinion of [the County] are contrary to its orderly operation or reputation interests.

R.R. at 231a-233a, 281a.

---

[6] The Arbitrator specified these offenses as relevant to the current dispute.

This Court explained in *Chambersburg*:

When reviewing an arbitrator's interpretation of a [collective bargaining agreement], the essence test is the proper standard of review. 'The essence test is a two[-]prong test under which an award should be upheld if[:] (1) the issue as properly defined is within the terms of the collective bargaining agreement[;] and (2) the arbitrator's award can be rationally derived from the collective bargaining agreement.' *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009) . . . . We are not required to agree with the arbitrator's interpretation of the [collective bargaining agreement], but we must 'look at whether that interpretation and application of the agreement can be reconciled with the language of the agreement. **We may vacate an award only if it indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement**.' *Northumberland Cnty. Comm'rs v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO Local 2016, Council 86*, 71 A.3d 367, 375 (Pa. Cmwlth. 2013) (en banc) (citation omitted) (internal quotation marks omitted).

*Chambersburg*, 120 A.3d at 412 (emphasis added; citation omitted). The *Chambersburg* Court continued:

Under the first prong,

[t]he essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.

*Cranberry Area Sch. Dist. v. Cranberry Educ. Ass'n*, 713 A.2d 726, 729 (Pa. Cmwlth. 1998) (quoting *Leechburg Area Sch. Dist. v. Dale*, . . . 424 A.2d 1309, 1312-13 ([Pa.] 1981)) . . . .

*Chambersburg*, 120 A.3d at 412.

6

Here, the Arbitrator defined the issue as "whether the County had just cause to discharge [] Grievants and, if not, what shall be the remedy?" R.R. at 281a (Arbitrator's Dec. at 5). Because Article 18 of the CBA encompasses just cause, the first prong of the essence test is met.

The County asserts that the Arbitrator's Award cannot satisfy the second prong of the essence test because the Arbitrator disregarded the CBA's plain language. The County cites *County of Berks v. International Brotherhood of Teamsters Local Union No. 429* (Pa. Cmwlth. No. 1230 C.D. 2007, filed May 5, 2008),[7] and *Department of Corrections, State Correctional Institution at Pittsburgh v. Pennsylvania State Corrections Officers Ass'n* (*SCI-Pittsburgh*), 56 A.3d 60 (Pa. Cmwlth. 2012), to support its position.

In *County of Berks*, the collective bargaining agreement contained a new provision requiring all employees who failed their use of weapons qualifications be suspended without pay and given four opportunities to qualify within one week (New Provision). The old provision contained a grandfather clause protecting correctional officers hired before January 1, 2000, from suspension or discharge as a result of their failure to qualify (Old Provision). Several correctional officers, hired before January 1, 2000, were suspended for their failure to qualify. The union filed a grievance, which proceeded to arbitration. The arbitrator determined that the New Provision was irreconcilable with the Old Provision and therefore replaced the Old Provision. The arbitrator also found that the balancing of competing interests between higher consequences and less training were considered when the New Provision was enacted. Nonetheless, the arbitrator rescinded the suspensions.

---

[7] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.

The appellants appealed to common pleas court, which affirmed the arbitrator's award. The appellants appealed to this Court, which reinstated the suspensions, opining: "Despite that stated recognition that the [a]rbitration [p]anel considered the circumstances and competing interests of the parties when crafting the [New Provision], the [a]rbitrator nevertheless ignored the determination of the [a]rbitration [p]anel and inserted his own judgment to, in effect, change the rights of the parties." *Cnty. of Berks*, slip op. at 10-11. This Court concluded that, by substituting his judgment and definition of just cause for that established by the express language of the labor contracts, the arbitrator failed to draw the award from the essence of the contract. *See id.*

In *SCI-Pittsburgh*, the issue before the arbitrator was whether certain grievances were timely filed. According to the collective bargaining agreement, the grievants had 15 days after their suspensions were issued to file a grievance. The grievants did not file their grievances until 85 working days after their suspensions were issued. Rather than dismiss the matter, the arbitrator ruled that each day of suspension was a new suspension and therefore the grievances were timely. The employer appealed to this Court, which ruled: "An arbitrator may not add time provisions that could have been, but were not included in the [collective bargaining agreement] when it was drafted." *SCI-Pittsburgh*, 56 A.3d at 64. This Court reversed the arbitrator's award, opining: "The [a]rbitrator's conclusion that the grievances were timely is without foundation in, fails to logically flow from, and cannot be reconciled with the clear language of the [collective bargaining agreement]." *Id.*

In both *County of Berks* and *SCI-Pittsburgh*, the issue before the arbitrator was the application of an unequivocal collective bargaining agreement provision. The arbitrator in both cases, despite recognizing the provision applied, did not apply the provision. There was no fact finding by the arbitrator, nor an

8

interpretation of the specific collective bargaining agreement provisions. Here, the issue before the Arbitrator was whether the County had just cause to discharge Grievants who were each charged with two offenses. The Arbitrator found that there was no just cause to discharge Grievants based on *the facts as he found them* and *his interpretation of the CBA*. Accordingly, *County of Berks* and *SCI-Pittsburgh* are inapposite.

> The Pennsylvania Supreme Court has clarified:

> [E]ven though an arbitrator is not permitted to ignore the [collective bargaining agreement's] plain language in fashioning an award, **the arbitrator's understanding of the plain language must prevail**. A reviewing court 'should not reject an award on the ground that the arbitrator misread the contract.' [*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc*.], 484 U.S. [29,] 38 . . . [(1987).] **The law is clear that an arbitrator's award must draw its essence from the** [**collective bargaining agreement**]. **It need not** . . . **reflect the narrowest possible reading of the** [**collective bargaining agreement's**] **plain language**. [*State Sys. of Higher Educ. (Cheyney Univ.) v. State College Univ. Pro. Ass'n*,] 743 A.2d [405,] 411 [(Pa. 1999)] (citing [*United Steelworkers v. Enter. Wheel & Car Corp.*], 363 U.S. [593] . . . [(1960)]; *see also Danville* [*Area Sch. Dist. v. Danville Area Educ. Ass'n, PSEA/NEA*,] 754 A.2d 1255[, 1260] [(Pa. 2000)] (observing that **an arbitrator 'is not confined to the express terms' of the** [**collective bargaining agreement**] **in discerning the parties' intent**). Even if a court's interpretation of the [collective bargaining agreement] is entirely different than the arbitrator's, the award must be upheld so long as it rationally derives from the [collective bargaining agreement]. *Westmoreland* [*Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*], . . . 939 A.2d [855,] 863 [(Pa. 2007)] (holding that **the essence test clearly does not permit the reviewing court 'to intrude into the domain of the arbitrator and determine whether an award is 'manifestly unreasonable''**).

*Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Pers. Ass'n*, 210 A.3d 993, 1006 (Pa. 2019) (emphasis added).

> Here, concerning the dishonesty charge, the Arbitrator opined:

> **It is clear that both men were less than honest when questioned by Commander Rohrbach during the fact[-]finding meetings**.  The record clearly reveals and they, themselves, ultimately admitted, that they did make taunting comments to the inmate.  Although Grievant Phillips did admit that he may have made sexual comments to the inmate five days after his fact[-]finding meeting, **neither fully acknowledged their actions until they heard the [A]udio[]tape**.

R.R. at 295a (Arbitrator's Dec. at 19) (emphasis added).

> The Arbitrator thus concluded:

> **Grievants were not forthcoming in their responses during their fact[-]finding meetings**.  For these reason[s], while discharge is not found to be appropriate, a serious penalty is warranted, and will be so awarded.

R.R. at 296a (Arbitrator's Dec. at 20) (emphasis added).  Accordingly, the Arbitrator declared: "On the basis of the record *as a whole* and *for the reasons discussed*, just cause for discharge is not found.  However, just cause for discipline is found."  *Id*. (emphasis added).

This Court cannot conclude that the Arbitrator's Award "indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA]." *Chambersburg*, 120 A.3d at 412.  The Arbitrator found that both Grievants were "less than honest" when questioned during the fact-finding meetings.  R.R. at 295a. Although the CBA specifies employment termination for a first offense of dishonesty, the Arbitrator clearly did not find the requisite level of dishonesty on the

10

part of Grievants to establish just cause for termination.[8] Consequently, the Arbitrator's Award satisfied the second prong of the essence test.

"The essence test does not permit this Court to vacate [the] [A]rbitrator's [A]ward even if we disagree with the [A]rbitrator's interpretation of the CBA." *Am. Fed'n of State, Cnty., & Mun. Emps., Dist. Council 87 v. Cnty. of Lackawanna*, 102 A.3d 1285, 1290 (Pa. Cmwlth. 2014). Accordingly, "the [Award] must be affirmed[.]"[9] *Millcreek Twp. Sch. Dist.*, 210 A.3d at 1002 (quoting *Cheyney*

---

[8] The County argued before the Arbitrator that there is precedent for employment termination for dishonesty. Specifically, the Arbitrator summarized:

> The County points out that discharges such as the ones at issue are not without precedent. Approximately one year ago, three Correctional Officers were discharged for arranging and conducting demeaning 'games' using inmates. While two of the Correctional Officers were found to be perpetrators of the 'games', the third was found to have known of the 'games', yet lied during the investigation by denying such knowledge. These discharges were upheld through an arbitration award. The County argues that as [] Grievants in the instant matter lied during the investigation, their discharges for dishonesty should similarly be upheld.

R.R. at 283a. This Court agrees with the Arbitrator that such dishonesty does not come close to Grievants' conduct herein.

[9] The Dissent states:

> Grievants, who were directly responsible for supervising the inmate and ensuring that he did not engage in self-harm, clearly should have exercised restraint in their interactions with the inmate, as the Arbitrator acknowledged. Grievants compounded their wrongdoing by lying to their superiors during the investigation, only admitting to their conduct after being confronted with [A]udiotapes of the incident. Under these circumstances, and in light of the unambiguous language of the parties' CBA, I would conclude that the Arbitrator's award violates the essence test.

*York Cnty. Prison v. Teamsters Local Union No. 776* (Pa. Cmwlth. No. 265 C.D. 2020, filed January 8, 2021) (Ceisler, J., dissenting), slip op. at 4 (citation omitted).

Respectfully, the Majority agrees with the Dissent that the behavior is unacceptable; however, it is not this Court's prerogative to replace the judgment of the Arbitrator with this Court's judgment. The Pennsylvania Supreme Court has instructed, in explicit terms, that the Arbitrator's interpretation must prevail. *See Millcreek Twp. Sch. Dist.*

*Univ.*, 743 A.2d at 413); *see also Pa. Tpk. Comm'n v. Teamsters Local Union No. 77* (Pa. Cmwlth. No. 1347 C.D. 2019, filed March 24, 2020) (wherein the collective bargaining agreement specified theft was a dischargeable offense and the arbitrator found the grievant's taking of the employer's tires did not warrant discharge).[10]

The County next argues that the Arbitrator's Award violates the public policy against prison inmate abuse. Specifically, the County contends that the Pennsylvania statutory authority relied upon in *County of Centre v. Musser*, 548 A.2d 1194 (Pa. 1988), provides the explicit, well-defined, and dominant public policy against abuse of prison inmates, which is required to vacate an arbitration award under the public policy exception to the essence test. The County further asserts that Pennsylvania courts have also identified this public policy from Section 5102 of the State Employees' Retirement Code.[11] The County avers that, in *Department of Corrections, State Correctional Institution at Forest v. Pennsylvania State Corrections Officers Ass'n*, 173 A.3d 854 (Pa. Cmwlth. 2017) (*SCI-Forest*), this Court held that, by reinstating the grievant to a corrections officer position while placing a restriction on him that is irreconcilable with the statutory definition of correction officer, the arbitrator's award failed to satisfy the essence test. The County maintains the same rationale should be adopted in this case.

---

This case is similar to *Pennsylvania Turnpike Commission v. Teamsters Local Union No. 77* (Pa. Cmwlth. No. 1347 C.D. 2019, filed March 24, 2020), wherein the parties' collective bargaining agreement specified that theft was a dischargeable offense. Notwithstanding that the collective bargaining agreement defined just cause, the arbitrator found that the grievant's taking of the employer's tires did not warrant discharge. While the Court may have found differently, the arbitrator's interpretation prevailed. Accordingly, this Court is constrained to affirm the trial court's order affirming the Arbitrator's Award.

[10] *Pennsylvania Turnpike Commission* is cited for its persuasive value.

[11] 71 Pa. C.S. § 5102 (Defines "Correction Officer" as: "Any full-time employee assigned to the Department of Corrections . . . whose principal duty is the . . . care, custody and control of inmates of a penal or correctional institution . . . operated by the Department of Corrections . . . .").

This Court notes that while *Musser* and *SCI-Forest* may establish a public policy against inmate abuse, neither Court addressed the public policy exception to the essence test. In *Musser*, the public policy exception was not raised or argued before the Court. The *Musser* Court held that the arbitrator's award was not rationally derived from the collective bargaining agreement and, thus, was properly set aside. The *SCI-Forest* Court held that, because the arbitrator's award was not rationally derived from the collective bargaining agreement, it did not need to address whether the public policy exception applied to vacate the award. Therefore, both cases are inapposite.

The Union rejoins that the narrow public policy exception is applied where the arbitrator finds that a grievant has committed the offense or acts of which he was accused, but nevertheless reduces the penalty, thereby contradicting a significant public policy. The Union further retorts that the trial court correctly found that the public policy against inmate abuse can be upheld through disciplinary measures less severe than employment termination for a first offense, and that the Arbitrator's Award appropriately enforces such public policy by imposing a lengthy suspension.

Initially,

'[a]n arbitration award will not be upheld if it contravenes public policy.' *New Kensington-Arnold Sch*[.] *Dist*[.] [*v. New Kensington-Arnold Educ. Ass'n*], 140 A.3d [726,] 736 [(Pa. Cmwlth. 2016)]. In considering whether an arbitrator's award violates public policy, the following three-step analysis is employed:

First, the nature of the conduct leading to the discipline must be identified. Second[,] we must determine if that conduct implicates a public policy which is well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general consideration of supposed public interests. Third, we must

13

determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator.

*Id.* (quoting *City of Bradford v. Teamsters Local Union No. 110*, 25 A.3d 408, 414 (Pa. Cmwlth. 2011)[)].

*Upper Merion Area Sch. Dist. v. Teamsters Local #384*, 165 A.3d 56, 63 (Pa. Cmwlth. 2017).

Here, concerning the charge of taunting and antagonizing an inmate, the Arbitrator elucidated:

The Union asserts that the basic threshold element required to establish just cause for discharge is notice to the employee that particular behavior or conduct will result in termination and argues that [] Grievants were never given notice that common prison banter could result in their discharge. **While the banter in this case was excessive and inappropriate**, **as testified to by Commander Rohrbach**, **banter of a similar nature does go on in a prison between Correctional Officer**[s] **and inmates**. The County points out that [] Grievants were well aware of the York County Prison Procedures Manual, the Code of Ethics and the [CBA]. **In this case**, **as the inmate was on SP2**, [] **Grievants had a greater obligation to control their reactionary urge to engage in demeaning banter upon being provoked by the inmate**.

R.R. at 293a (emphasis added).

The Arbitrator expounded:

[Grievants'] actions in this regard were less than professional and they did not comport themselves in a way designed to de-escalate the situation. **Although their conduct was wrong and deserving of discipline**, **it was pejorative name-calling between** [] **Grievants and the inmate**, and does not come close to the despicable misconduct that resulted in the discharge of the three

14

Correctional Officers in 2017, two for their behavior of using inmates in 'games' and the third for his complicity in not reporting the matters and for denying knowledge of them.

R.R. at 295a-296a (Arbitrator's Dec. at 19-20) (emphasis added). Concerning the 2017 case, the County expanded:

There is a past precedent of the Prison taking a firm stance on cases of inmate abuse - especially when it comes to inmates with mental issues. In a recent arbitration award from February 2017, *In re: Teamsters Local 776 [&] York County (Prison) Re: Discharge of Daniel Graff, David Whitcomb, [&] Mark Haynes* [(CO Haynes)], *see* []R.R. at 336a-365a[], an arbitrator upheld the discharge of three [C]orrectional [O]fficers who 'were all involved in what became known as the 'Retard Olympics.'' Arbitrator Thomas McConnell in that case took a strict stance[,] which recognized and protected inmates from any abusive conduct by Prison [C]orrectional [O]fficers. He also upheld the termination of CO Haynes, who he found had no involvement in the inmate abuse, []R.R. at []359a-360a[], but knew about the games and did not report them, in addition to the fact that he 'lied during the investigation by denying knowledge of 'the games[.]'['] []R.R. at 362a.[]

Appellant Br. at 13 n.2 (italics added). This Court agrees with the Arbitrator that Grievants' alleged conduct herein "does not come close to the despicable misconduct that resulted in the discharge of the three Correctional Officers in 2017." R.R. at 296a.

Thus, the Arbitrator concluded:

Although [] Grievants' misconduct is deserving of a serious penalty, it does not merit discharge. As testified to by Commander Rohrbach, he, himself, admitted to inappropriate name-calling on occasion and acknowledged that such occurs in the prison. Grievant Baez's unrebutted testimony that he had observed other Correctional Officers engaging in such 'banter' with other inmates, further reveals that such conduct was not unheard of in the prison environment. In this case, however, the

15

> inmate was on SP2 and [] Grievants had a greater obligation to control their reactionary urge to engage in demeaning banter.

R.R. at 296a (Arbitrator's Dec. at 20).

This Court acknowledges that there is a dominant public policy against inmate abuse. However, the conduct here was described by the Arbitrator as "excessive and inappropriate" banter, and "pejorative name-calling between [] Grievants and the inmate[.]" R.R. at 293a, 296a. For that conduct, the Arbitrator imposed a suspension of approximately one year without pay. Based upon "the factual findings of the Arbitrator[,]" this Court holds that the Arbitrator's Award does not pose an unacceptable risk that a clear public policy will be undermined if it is implemented. *Upper Merion*, 165 A.3d at 63 (quoting *New Kensington-Arnold*, 140 A.3d at 736). Accordingly, the Arbitrator's Award does not directly contravene the well-settled and long-recognized public policy against inmate abuse.[12]

For all of the above reasons, this Court is constrained to affirm the trial court's order.

_____
ANNE E. COVEY, Judge

President Judge Brobson did not participate in the decision in this case.

---

[12] In addition, the County contends that the Arbitrator's Award violates the public policy against discrimination on the basis of disability and sex. Based on the Arbitrator's findings, the Arbitrator's Award does not directly contravene the well-settled and long-recognized public policy against unlawful disability and sex discrimination.

16

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

York County Prison,                          :
                  Appellant       :
                                   :
          v.                           :
                                   :   No. 265 C.D. 2020
Teamsters Local Union No. 776        :

## O R D E R

AND NOW, this 8th day of January, 2021, the York County Common Pleas Court's February 10, 2020 order is affirmed.


_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

York County Prison,                    :
                    Appellant          :
                                       :
        v.                             :   No. 265 C.D. 2020
                                       :   ARGUED:  December 8, 2020
Teamsters Local Union No. 776          :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

DISSENTING OPINION
BY JUDGE CEISLER                                FILED:  January 8, 2021

        I respectfully dissent.  Because I would conclude that the Arbitrator's award violates both the essence test and the well-defined, dominant public policy against abuse of prison inmates, I would reverse the Order of the Court of Common Pleas of York County (Trial Court).

        The facts of this case are undisputed.  Grievants, two corrections officers at York County Prison (Prison), verbally taunted and derided an inmate with known mental health issues, who had just been placed on suicide prevention watch, for 45 minutes, calling him, among other things, "faggot," "queer," "pussy," "big pussy," "a piece of shit," "nobody," "dumb dumb," "licked by a lesbian," and "little bitch." Reproduced Record (R.R.) at 291a-93a.

        During the Prison's investigation into the incident, both officers initially denied their conduct.  The Commander conducting the investigation asked both officers, "Prior to or following the [u]se of [f]orce, did you or any other staff taunt or antagonize [the inmate]?" to which they each replied, "No." *Id.* at 294a, 327a, 331a.  The officer who called the inmate "faggot," "queer," "pussy," and "licked by a lesbian" was also directly asked, "Did you at any time prior to or following the

[u]se of [f]orce[] make any demeaning or defamatory sexual comments to [the inmate]?" to which he replied, "No." *Id.* at 295a, 331a.

The parties' collective bargaining agreement (CBA) contains a discipline table, negotiated and agreed to by the parties, that expressly provides that in cases of proven dishonesty, employees shall be subject to *termination for a first offense*. *Id.* at 231a-33a. The CBA also provides that the list of offenses in the discipline table is non-exhaustive and gives the Prison the right to discipline employees for any conduct that it believes is contrary to the Prison's orderly operation. *Id.* at 233a.

Significantly, in his decision, the Arbitrator found that: it was "clear that both [officers] were less than honest when questioned by Commander Rohrbach during the fact[-]finding meetings"; the officers were "not forthcoming in their responses during their fact[-]finding meetings"; and "[t]he record clearly reveals[,] and [Grievants] themselves[] ultimately admitted, that they did make taunting comments to the inmate." R.R. at 295a-96a. Despite finding that both Grievants were dishonest, the Arbitrator nonetheless concluded that "just cause for discharge [was] not found" and reduced Grievants' discipline to suspensions. By substituting his judgment regarding the appropriate level of discipline for Grievants' proven dishonesty, I believe the Arbitrator improperly modified the terms of the CBA in violation of the essence test.

This is not a situation in which "just cause" for discipline was undefined in the parties' CBA. If that were the case, the Arbitrator would have had broad authority to define "just cause." Here, the CBA specifically defined "just cause" for discharge by providing that dishonesty is a terminable offense. *See* R.R. at 230a (stating that the Prison "*shall not* demote, suspend, *discharge*, or take any disciplinary action against *an employee without just cause*") (emphasis added); *Id.*

at 231a-33a (under the discipline table, employees shall be subject to termination for a first offense of proven dishonesty).

I recognize that our standard and scope of review in this case is limited.[1] However, as the Majority points out, in reviewing the Arbitrator's decision, "[W]e must 'look at whether [the Arbitrator's] interpretation and application of the [CBA] *can be reconciled with the language of the [CBA]*. We may vacate an award only if it indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.'" *York Cnty. Prison v. Teamsters Local Union No. 776* (Pa. Cmwlth., No. 265 C.D. 2020, filed January 8, 2021), slip op. at 6 (citations omitted) (emphasis added). In my view, the Arbitrator's decision cannot be reconciled with the clear and unambiguous language of the CBA and his own finding that Grievants were, in fact, dishonest. Therefore, I would conclude that the award fails to logically flow from the parties' CBA.

The Majority seems to suggest that the parties' CBA permits the exercise of discretion in determining whether to impose the prescribed penalties, stating: "Although the CBA specifies employment termination for a first offense of dishonesty, the Arbitrator clearly did not find *the requisite level of dishonesty* on the part of Grievants to establish just cause for termination." *Id.* at 10-11 (emphasis added). However, the CBA contains no provision permitting such discretion for cases of proven dishonesty. Instead, it mandates termination for a first offense. R.R. at 231a-33a.

---

[1] Our standard of review of a grievance arbitration award "is one of deference to the arbitrator's award" and our scope of review is the essence test. *Slippery Rock Univ. of Pa. of State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Faculties*, 916 A.2d 736, 740 n.3 (Pa. Cmwlth. 2007).

Furthermore, the Arbitrator justified his imposition of a lesser discipline on Grievants based on his finding that the type of "banter" exchanged between the officers and the inmate in this case is "commonplace" at the Prison, citing the "unrebutted testimony that [one of the Grievants] had observed *other [c]orrections [o]fficers* engaging in such 'banter' with *other inmates*." R.R. at 296a (emphasis added). This reasoning ignores the fact that *this particular inmate* suffered mental health issues and, at the time of the incident, had just been placed on suicide prevention watch, demonstrating the severity of his psychological condition. Grievants, who were directly responsible for supervising the inmate and ensuring that he did not engage in self-harm, clearly should have exercised restraint in their interactions with the inmate, as the Arbitrator acknowledged. *See id.* ("In this case, . . . the inmate was on [suicide prevention watch] and the Grievants had a greater obligation to control their reactionary urge to engage in demeaning banter."). Grievants compounded their wrongdoing by lying to their superiors during the investigation, only admitting to their conduct after being confronted with audiotapes of the incident. Under these circumstances, and in light of the unambiguous language of the parties' CBA, I would conclude that the Arbitrator's award violates the essence test.

Even if the award did not violate the essence test, I would still reverse the Trial Court's Order because I believe the award violates the well-defined, dominant public policy against abuse of prison inmates by corrections officers. The Arbitrator acknowledged Grievants' abuse of power and dishonesty, but ultimately determined that discharge was unwarranted because such "banter" was "commonplace" in the Prison. I strongly disagree with this justification. Calling a mentally unstable, suicidal inmate "faggot," "queer," "pussy," "big pussy," "a piece of shit," "nobody,"

EC - 4

"dumb dumb," and "little bitch" over the course of 45 minutes is not simple "banter"; it is demeaning, derogatory language that was clearly intended to harass and degrade the inmate. As the Trial Court recognized, there is "no doubt that the conduct of the corrections officers [in this case] [wa]s *deplorable*." R.R. at 211a (citation omitted) (emphasis added). Even worse, both officers attempted to conceal their behavior afterward, and, if not for the audio recordings, they might have gotten away with it.

As the Prison cogently asserts in its brief:

> This instant matter comes to this Court at a critical time in our [n]ation's history. We are a [n]ation divided on issues centered upon distrust of law enforcement and also issues of discrimination. These are not new or novel issues facing our country. Rather, they have been deeply rooted in our country's history. With the use of video recordings becoming more prevalent, however, there is currently a large spotlight on these issues and a major push for some type of reform.
>
> What has come to light, especially as of recent, is an abuse of power by those who we have entrusted to protect our society and enforce its laws. We have seen, and continue to see, protests seeking reform to address this abuse of power and social injustices that exist hidden in our society. The instant case before this Court involves the abuse of power by law enforcement and the use of "hate speech" which many in this [c]ountry seek to eradicate.

Prison's Br. at 12.

I believe the Majority's decision in this case sends a troubling message to our society that there is an acceptable level of tolerance for verbal and emotional abuse of inmates by prison officials and corrections officers. Rather than decrying this type of "deplorable" behavior, the Arbitrator's award encourages similar abusive conduct by other corrections officers "who are so inclined to feel free to misbehave in egregious ways, without fear of any meaningful consequence." *Neshaminy Sch. Dist. v. Neshaminy Fed'n of Teachers*, 171 A.3d 334, 339 (Pa. Cmwlth. 2017) (*en*

*banc*); *see* Prison's Br. at 14 ("If the Prison and its Warden are required to provide **any** level of tolerance toward[] any officer's attempted cover[-]up of abuse of inmates . . ., then all hope is lost.") (emphasis in original).

     For these reasons, I would reverse the Trial Court's Order.

                                         _____

                                         ELLEN CEISLER, Judge