IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Williamsport Area School District    :
   :
        v.               : No. 496 C.D. 2020
   : Argued: December 8, 2020
Williamsport Area Education    :
Support Professionals Association,    :
   :
           Appellant    :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                       FILED: August 6, 2021


Williamsport Area Education Support Professionals Association (Association) appeals the April 28, 2020 order of the Court of Common Pleas of Lycoming County (trial court) granting the Williamsport Area School District's (District) petition to vacate the arbitration award, on the basis that the arbitrator's opinion and award violated the second prong of the essence test. Upon review, we affirm.

On August 15, 2017, the District and Association entered into a collective bargaining agreement (CBA) effective July 1, 2017, through June 30, 2022. Reproduced Record (R.R.) at 26a-63a. Pertinent sections of the CBA include:

> 8-3: BIDDING ON VACANCIES - Determination for employees' qualifications for a position shall be based upon verified work experience, verified

educational/training/credential, applicable testing results and the District's defined qualifications for each position. All eligible qualified employees of the bargaining unit may submit bids for vacant or newly-created positions . . . .

\* \* \*

8-5: AWARDING POSITIONS - All vacancies shall be filled by awarding the position to the most senior eligible qualified bidding employee, except where qualified employees are on a recall list as defined in Article 8-7 below . . . .

\* \* \*

8-8: QUALIFICATIONS - For purposes of Article 8, qualifications for all positions shall be defined solely by the District. The District may consider an employee's work attendance, disciplinary history, credentials and other job specific qualifications in defining qualifications for all positions. If the District establishes a written test for a vacant position that will be scored, a passing grade shall be established for that test. The position qualifications established by the District shall not be challenged through the grievance process.

R.R. at 41a-42a.

At the time of the dispute, Association member and the grievant, Dana Richards (Richards), was employed as a full-time custodian at Hepburn-Lycoming Elementary School (Hepburn). In late 2018, the head custodian position at Hepburn was up for bid. The head custodian position was properly posted, and Richards submitted an application. Richards was one of three internal applicants who were invited to test for the head custodian position. Richards took the test administered by the District and achieved a passing score of 75%. Richards was the most senior

applicant who passed the test for the head custodian position, having been employed by the District for more than 21 years. R.R. at 82a.

On February 15, 2019, Richards was informed via email that the District determined that he was not qualified for the head custodian position at Hepburn. The District cited one written disciplinary warning that Richards received on April 3, 2018, for tardiness, as well as Richards' most recent performance evaluation in which he received a "needs improvement," as the reasons why Richards was not qualified for the head custodian position. The District admitted that all instances of Richards' tardiness occurred within the seven-minute grace period. R.R. at 95a. The head custodian position was awarded to a less senior employee who had also passed the test. *Id.* at 82a.

The Association, on behalf of Richards, timely filed a grievance challenging the award of the head custodian position to a less senior employee. On December 10, 2019, after a hearing and briefing, the arbitrator sustained the grievance and directed that Richards be awarded the head custodian position at Hepburn. R.R. at 97a.

The arbitrator analyzed the relevant provisions of the CBA, including Article 8-5's requirement that "all vacancies shall be filled by awarding the position to the most senior, eligible, qualified bidding employee." R.R. at 92a. The arbitrator noted that this language is typically referred to as a "modified seniority/sufficient ability clause," under which it must merely be determined whether the most senior employee can do the job. *Id.* The arbitrator determined that the District's decision that Richards was unqualified for the head custodian position was "an arbitrary and capricious exercise of its discretionary authority." *Id.* at 94a.

3

The arbitrator found that Richards' disciplinary history for tardiness was a minor infraction that was corrected, and that "any fair assessment of [Richards'] overall evaluations reflect that they were more than satisfactory." R.R. at 95a. In granting the grievance, the arbitrator stated that he

> [f]ully recognize[s] the broad discretionary powers granted to the District in evaluating applicants for various positions. However, [I am] not reviewing [Richards'] qualifications in a vacuum. [I am] reviewing them under a significant bargained for benefit, where, as the most senior applicant, [Richards'] seniority must be given substantial consideration along with having only "minimum qualifications" for the posted position. In balancing these two factors, it readily appears the District gave little to no weight to the fact that [Richards] was the most senior bidder when determining whether he simply possessed the minimum qualifications necessary to perform the position of head custodian. I cannot help but believe that the District was perhaps inadvertently, comparing [Richards] to the next most senior applicant, if not others, when deciding to "disqualify him[.]"

R.R. at 96a (emphasis in original).

The District filed a petition to vacate the arbitration award in the trial court. On April 28, 2020, after a hearing, the trial court granted the petition to vacate the arbitration award. The trial court found that the arbitrator substituted his own judgment for that of the District by defining the term "qualified" in Article 8-3 of the CBA as "minimally qualified," despite the provisions of Article 8-8 of the CBA defining "qualifications as inclusive of work attendance, disciplinary history, credentials and other job specific qualifications" and vesting the power to determine such qualifications with the District. R.R. at 5a. The trial court held that "there is nothing within the CBA that prescribes [sic] the District from treating attendance or

4

disciplinary infractions as disqualifying." *Id.* The Association appealed to this Court.

On appeal, the Association argues that the trial court abused its discretion by vacating the arbitration award. The Association asserts that the trial court substituted its own fact finding and contract interpretation for that of the arbitrator, despite the arbitrator acting within the scope of his authority and referencing the CBA's language in rendering the decision, thereby meeting the second part of the "essence test." The Association asks this Court to reverse the trial court's order and reinstate the arbitration award.

The District argues that the trial court did not abuse its discretion by vacating the arbitration award because the award failed the second prong of the essence test. The District asserts that the arbitrator improperly substituted his judgment for that of the District by adding new language to the CBA. The District asks this Court to affirm the trial court's order vacating the arbitration award.

Initially, as this Court has recently observed:

> In reviewing an arbitration award, this Court applies the highly deferential two-prong "essence test." *Chambersburg Area School District v. Chambersburg Education Association (Professional)*, 120 A.3d 407, 412 (Pa. Cmwlth. 2015). First, we decide whether the issue is encompassed by the [CBA]. Second, if the arbitrator's interpretation can rationally be derived from the [CBA], it will be sustained. As we have explained:
>
> > We are not required to agree with the arbitrator's interpretation of the [CBA], but we must "look at whether that interpretation and application of the agreement can be reconciled with the language of the agreement. We may vacate an award only if it indisputably and genuinely is without

5

> foundation in, or fails to logically flow from, the [CBA]."

*Id.* [(citation omitted)]. "[I]n the vast majority of cases, the decision of the arbitrator shall be final and binding upon the parties." *Millcreek Township School District v. Millcreek Township Educational Support Personnel Association*, [210 A.3d 993, 1002 (Pa. 2019) (*Millcreek*)] (quotation omitted). The essence test is "a narrow exception to this finality doctrine." *Id.*

*Slippery Rock University of Pennsylvania v. Association of Pennsylvania State College and University Faculty*, 241 A.3d 1278, 1284 (Pa. Cmwlth. 2020).

Specifically, with respect to the second prong of the essence test, the Pennsylvania Supreme Court has emphasized:

> Under the second prong, we ask whether the award itself can rationally be derived from the CBA. Here, again, we emphasize that the parties to a CBA have agreed to allow the arbitrator to give meaning to their agreement and fashion appropriate remedies for "unforeseeable contingencies." *See* [*United Steelworkers of America v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 578-79 (1960)] (observing that a CBA "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate"). The words of the CBA are not "the exclusive source of rights and duties." *Id.*; *see* [*United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597-99 (1960).] The arbitrator is authorized to make findings of fact to inform his interpretation of the CBA. *United Paperworkers Internat*[*ional*] *Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 [(1987) (*Misco*)].

> Accordingly, even though an arbitrator is not permitted to ignore the CBA's plain language in fashioning an award, the arbitrator's understanding of the plain language must prevail. A reviewing court "should not reject an award on the ground that the arbitrator

6

misread the contract." *Misco*, 484 U.S. at 38[.] The law is clear that an arbitrator's award must draw its essence from the CBA. It need not . . . reflect the narrowest possible reading of the CBA's plain language. [*State System of Higher Education, (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 743 A.2d 405, 411 (Pa. 1999)] (citing *Enterprise Wheel*, 363 U.S. at 597[]); *see also* [*Danville Area School District v. Danville Area Education Association, PSEA/NEA*, 754 A.2d 1255, 1260 (Pa. 2000)] (observing that an arbitrator "is not confined to the express terms" of the CBA in discerning the parties' intent). Even if a court's interpretation of the CBA is entirely different than the arbitrator's, the award must be upheld so long as it rationally derives from the CBA. [*Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007)] (holding that the essence test clearly does not permit the reviewing court "to intrude into the domain of the arbitrator and determine whether an award is 'manifestly unreasonable'").

*Millcreek*, 210 A.3d at 1006. *See also Riverview Intermediate Unit #6 v. Riverview Intermediate Unit #6 Education Association* (Pa. Cmwlth., No. 1134 C.D. 2020, filed June 7, 2021), slip op. at 13 ("All that is necessary is that the arbitrator's interpretation 'can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.' [*Millcreek*, 210 A.3d] at 1002 (quotations omitted).").[1]

Here, the trial court found that the arbitrator's grievance award violated the second prong of the essence test because the arbitrator substituted his own

---

[1] *See* Pa. R.A.P. 126(b)(1) and (2) ("As used in this rule, "non-precedential decision" refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. []Non-precedential decisions . . . may be cited for their persuasive value."); 210 Pa. Code §69.414(a).

definition of "qualified" in Article 8-3 despite the Agreement providing a definition. We agree.

> The arbitration award held that the language of Article 8-5 is
>
> typically identified as a "modified seniority/sufficient ability" clause which provides, in general, that the senior employee will be given preference if he/she possesses sufficient ability to perform the job. As such, minimum qualifications are enough, and it is necessary to determine only whether the employee with greater seniority can, in fact, do the job.

R.R. at 92a-93a.

However, Article 8-5 of the CBA requires that the most senior *qualified* individual be awarded the position. R.R. at 42a. The express language of Article 8-8 confers upon the District the authority to determine the qualifications for a position, and does not prohibit the District from treating various disciplinary infractions, such as punctuality and attendance, as disqualifying. *Id.* Indeed, Article 8-8 specifically provides that "[t]he District may consider an employee's work attendance, disciplinary history, credentials and other job specific qualifications in defining qualifications for all positions." *Id.* The arbitrator's award improperly inserted a "modified seniority/sufficient ability" provision into the CBA where the parties had not bargained for nor agreed upon one. The arbitrator's insertion of such a provision into the CBA resulted in the impairment of the District's express authority to define "qualified" under Article 8-8 and as applied under Article 8-3. *See id.* at 41a-42a.

Similarly, in *Riverside School District v. Riverside Educational Support Personnel Association ESP-PSEA-NEA* (Pa. Cmwlth., No. 1771 C.D. 2019, filed October 9, 2020) (*Riverside*), the school district and the union were parties to

8

a CBA covering the employment of paraprofessionals within the district, including union paraprofessionals. An instructional paraprofessional vacancy was posted and the district received a number of applications for that position. The district selected and ranked seven individuals to participate in a first round of interviews. Two of the selected applicants were union members and were ranked third and fourth among the seven applicants based upon their qualifications. However, a non-union member was ranked first among the seven applicants. Following the first round of interviews, the same non-union member was ranked first among the applicants and the union members remained ranked third and fourth, respectively. The second round of interviews included an academic proficiency test following which the non-union member remained first in the rankings followed by the two union members. As a result, the non-union member was hired to fill the instructional paraprofessional position vacancy.

The union filed a grievance alleging, *inter alia*, that only union members were eligible to fill paraprofessional vacancies, and there was never an academic proficiency test as part of the application or interview process to fill a paraprofessional vacancy, based on the past practices of the parties. Following a denial of the grievance and arbitration, an arbitrator ultimately issued an award sustaining the grievance. In the final award, the arbitrator determined that although the relevant CBA contained a clause that provided the district with the right to establish the qualifications and competency of candidates when filling vacancies, and although the CBA did not contain a past practices clause, the district did not have an unfettered right to add new requirements to a position once it was posted and union members applied for that position. The arbitrator found that the past practice of the parties was part of the CBA and precluded the district from adding

9

the academic proficiency test as part of the interview process to fill the instructional paraprofessional position vacancy or from offering the position to a non-union candidate. On appeal by the district, the court of common pleas vacated the arbitration award.

On further appeal, this Court affirmed the trial court's order vacating the arbitration award. As this Court explained:

> The text of the CBA in the instant matter . . . provides the [d]istrict with the sole discretion to determine the levels of candidate qualifications, contains a broad integration clause precluding the consideration of past practices, and contemplates by its express language the consideration of non-[union] members for advertised vacancies. As discussed herein, therefore, the [a]rbitration [a]ward does not rationally derive from the terms of the CBA.

> * * *

> Further, the [a]rbitration [a]ward places the parties' past hiring history over the express language of the CBA. Regardless of the parties' historical hiring pattern, . . . the CBA expressly reserves to the [d]istrict the exclusive right to determine candidates' competencies and qualifications in filling vacancies. Contrary to the [a]rbitrator's suggestion, the CBA in no way directs that successful candidates for vacancies must be [union] members. In fact, the express preference contained in . . . the CBA – that [union] members are to be given preference over other candidates in the event of equally qualified applicants – contemplates that non-[union] candidates may apply, be considered for, and be awarded vacancies advertised under the terms of the CBA, provided such candidates are more qualified than [union] applicants. Accordingly, in addition to the contemplation of past practices being precluded by the CBA's comprehensive integration clause, the

10

[a]rbitrator's determination that the [d]istrict was bound by the parties' past practice to fill the advertised paraprofessional position with [a union] member is not rationally derived from the CBA.

*Riverside*, slip op. at 14, 18 (citations omitted).

Likewise, as outlined above, the express language of Article 8-8 of the CBA herein provides the District with the authority to determine the qualifications for a position, and does not prohibit the District from treating various disciplinary infractions as disqualifying. *See* R.R. at 41a-42a. Additionally, the arbitrator's award improperly inserted a "modified seniority/sufficient ability" provision into the CBA where none was agreed to by the parties, and improperly constrained the District's express authority in this regard. *See id.* Moreover, as in *Riverside*, the CBA herein also contains an integration clause thereby precluding the insertion of this provision into the CBA during its effective term.[2] Based on the foregoing, we agree with the trial court's determination that the arbitration award was not rationally derived from the CBA, thereby failing to meet the second prong of the essence test.

Accordingly, the trial court's order is affirmed.

MICHAEL H. WOJCIK, Judge

---

[2] Article 19-1 of the CBA states, in relevant part:

Both parties to the [CBA] agree that they have fully bargained with respect to all items which are negotiable between the parties, and both parties agree that during the term of this [CBA] there shall be no further negotiations with respect to any subject or item, irrespective of whether or not the subject or item is contained in the [CBA] . . . .

R.R. at 62a.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Williamsport Area School District   :
  :
v.   : No. 496 C.D. 2020
  :
Williamsport Area Education   :
Support Professionals Association,   :
  :
Appellant   :

# **O R D E R**

AND NOW, this 6th day of August, 2021, the April 28, 2020 order of the Lycoming County Court of Common Pleas is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge