**SCHOOL DISTRICT OF THE CITY OF ERIE, Pennsylvania**

v.

**ERIE EDUCATION ASSOCIATION, PSEA/NEA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2005.
Decided April 28, 2005.

1. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–402.

John Paul Jones, Edinboro, for appellant, PSEA/NEA.

Richard W. Perhacs, Erie, for appellee, School District of the City of Erie.

Richard S. McEwen, State College, for amicus curiae, Pennsylvania State Education Association.

BEFORE: COLINS, President Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Erie Education Association, PSEA/NEA (Association) appeals from an order of the Court of Common Pleas of Erie County (trial court) that vacated an arbitrator's award entered in favor of the Association. The trial court found that the arbitrator improperly ordered the School District of the City of Erie (District) to (1) reinstate a physical education teacher position it had eliminated and (2) compensate the teachers who had assumed the duties of the position. We affirm in part and reverse in part.

The present dispute began following the retirement of the full-time physical education teacher assigned to the District's Grover Cleveland and Perry elementary schools. Instead of hiring a replacement, the District eliminated the vacant position through attrition and reassigned the responsibilities to the elementary homeroom teachers in the two schools. The District announced its decision through memoranda issued to the staff upon their return for the 2001–2002 school year. By way of example, the memorandum from the principal to the staff at Grover Cleveland provided:

Grover Cleveland Elementary School has not been assigned a physical education teacher for the 2001–02 school year. Classroom teachers will be expected to teach physical education to their homeroom students. Please plan a 20—25 minute period each week for physical education class and make sure that it appears in your lesson plans.

I have copies of physical education outcomes and benchmarks for the various grade levels available in the office to help you plan appropriate activities. You may use the balls, jump ropes, and other equipment from the stage and PE office in the gymnasium. You may wish to refer back to the texts and manuals you used in college when you took your teaching of health and physical education classes. There are many lesson plans and activities available on the web. After choosing your favorite browser or search engine, simply type in "Physical Education Lessons" or "Physical Education Lesson Plans" and you will have

access to hundreds of lessons already designed.

Reproduced Record at 84a (R.R. ——).

The Association filed a grievance on behalf of the affected homeroom teachers (Grievants) alleging that the District's actions were a violation of at least five articles of the collective bargaining agreement (CBA) between the parties.[1] Specifically, the Association alleged that Grievants were receiving disparate treatment from their counterparts at the District's other elementary schools and that their new teaching responsibilities constituted a change in the terms and conditions of their employment. The Association demanded that the District reinstate the physical education position. The parties were unable to resolve the grievance through their contractually mandated grievance procedure and the matter proceeded to an arbitration hearing on May 17, 2002.

Additional facts, as adduced at the hearing and as found by the arbitrator, are as follows. Under the District's new plan, Grievants must conduct a weekly physical education period for their homeroom students as well as for special education students that are now assigned to them for physical education instruction. Typically, Grievants supervise physically active games such as basketball, dodgeball, red rover and tag. Prior to assuming these new responsibilities, Grievants used the time their students were in physical education class to perform a variety of job-related tasks such as meeting with parents, preparing for class and tutoring students. All of the Grievants hold elementary teaching certificates; none are certified to teach physical education. The other twelve elementary schools in the District continue to have a dedicated physical education teacher or share the position with another school.

Several of the Grievants testified that they did not feel qualified to teach physical education. For example, Judith Newlin, a third-grade teacher at Grover Cleveland, admitted that she is not an athletic person and cannot demonstrate skills such as dribbling a basketball or shooting a basket. Notes of Testimony, 5/17/02, at 20 (N.T. ——); R.R. 58a. Newlin indicated that she is unaware of the physical limitations of her students and what activities are age-appropriate. She does not feel she can impart skills that will prepare her students for the more advanced instruction they will receive as they are promoted to subsequent grade levels. Grievants also expressed concerns about leaving their students unattended while they retrieve gym equipment from the office.

The arbitrator found that the District's actions violated three provisions of the CBA. First, the arbitrator found that the District had unilaterally changed the terms and conditions of Grievants' employment in violation of Article II of the CBA (Recognition), which recognizes the Association as the exclusive representative of the bargaining unit. The arbitrator emphasized in this regard that his concern was "not so much the elimination of the position itself as it is the addition of preparation and duties to the affected teachers without notice and without discussion." Arbitrator's Decision at 11; R.R. 215a.[2] Second, the

---

1. The District and the Association are parties to a CBA governing the wages, hours and other terms and conditions of employment of the teachers in the bargaining unit. The CBA at issue in this case was effective from July 1, 2000 to June 30, 2004 and was reached pursuant to the Public Employe Relations Act

(PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

2. Because the arbitrator sustained the grievance based on the contract provisions cited above, he deemed it unnecessary to consider the Association's argument that it was not

arbitrator found that the District violated Article III(H) (Association Rights) by implementing the change without convening a teacher-administrator committee. Finally, the arbitrator found that the District violated Article VI(P) (Teaching Conditions) by assigning Grievants outside the scope of their teaching certificates in violation of state regulations.

For the foregoing reasons, the arbitrator sustained the grievance and ordered two distinct remedies:

[T]he District is ordered to restore and fill the elementary physical education position for the remainder of the duration of the current [CBA]. Inasmuch as the workload and responsibility of the homeroom teachers was increased, depriving them of a professional advantage, they shall be compensated at their contractual hourly rate for the time they spent teaching physical education.

Arbitrator's Decision at 13; R.R. 217a.

The District appealed the arbitrator's award. The trial court vacated the award in its entirety and, in a cursory 1–½ page order, concluded that "[a]s a matter of law, the arbitrator's award cannot draw its essence from the CBA." Trial Court Order at 1; R.R. 3a. The trial court reasoned that the District had reserved its right to make "managerial decisions" and that its decision to eliminate the physical education position was not a matter subject to bargaining. Thus, the trial court found that

the arbitrator lacked authority under the CBA to either order the District to reinstate the position or award back-pay to Grievants; at most the arbitrator could require the parties to convene a teacher-administrator committee. Finally, the trial court concluded that, to the extent Grievants are differently situated than other elementary school teachers in the District, their recourse is "effects bargaining" under Section 702 of PERA, 43 P.S. § 1101.702.[3] This appeal by the Association followed.

At the outset, we note that judicial review of an arbitration award under PERA is highly circumscribed and affords great deference to the arbitrator's decision. Such a standard recognizes the many benefits of arbitration and that, in the vast majority of cases, the decision of the arbitrator chosen by the parties should be final and binding. There is an exception to this rule of deference, however, where the arbitrator's award does not "draw its essence from the CBA." *Rochester Area School District v. Rochester Education Association, PSEA/NEA,* 747 A.2d 971, 973 (Pa. Cmwlth.2000). In 1999, the Pennsylvania Supreme Court restated the so-called "essence test" standard of review as follows:

Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collec-

obligated to entertain effects bargaining because of language in Article XIV(E) of the CBA stating that "[t]he [District] and the Association agree that negotiations will not be reopened on any item whether contained herein or not during the life of this agreement." R.R. 48a.

3. It provides:
   Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or

policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.
43 P.S. § 1101.702.

tive bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999).

■ Beginning with the first prong of the essence test, the objective of the CBA, like most collective bargaining agreements under PERA, is to codify the parties' "negotiations concerning wages, hours, and other terms and conditions of employment[.]" CBA, Preamble; R.R. 14a. By shifting physical education responsibilities onto Grievants, the District effected a change in the terms and conditions of Grievants' employment. Thus, there is really no dispute that the issues presented in the grievance fell within the terms of the CBA.

The real issue in this case concerns the second prong of the essence test: whether the arbitrator's award was rationally derived from the CBA. Analysis of this issue must recognize the two distinct actions taken by the District: elimination of the physical education position and the allocation of those teaching responsibilities to Grievants. The arbitrator found that both actions violated the CBA and fashioned his remedies accordingly.

The arbitrator began his analysis with the Recognition provisions of Article II of the CBA. Article II provides, in pertinent part, as follows:

A. The Board hereby recognizes and will continue to recognize during the term of this agreement, the [Association], as the exclusive representative of all professional employes to the extent certified in proceedings docketed at No. PERA–R–10–W with the Pennsylvania Labor Relations Board.

\* \* \*

C. The Association, as exclusive representative of all teachers in the bargaining unit in the School District, and the Board shall enjoy all of the rights and privileges granted to them under the provisions of the [PERA] as now enacted or hereinafter amended.

CBA, Article II; R.R. 15a. The arbitrator acknowledged that "it is not for a neutral to second guess [the District's] decision either to eliminate a position or to offer physical education to students in any particular way." Arbitrator's Decision at 10; R.R. 214a. Nevertheless, because the District's actions constituted a unilateral change in terms and conditions of employment, the arbitrator concluded that this change was a matter for collective bargaining under Article II. We agree.

Article II(C) incorporates by reference Section 701 of the PERA, which provides in pertinent part that "[c]ollective bargaining is the performance of the *mutual obligation* of the public employer and the representative of the public employes to meet at reasonable times and *confer in good faith with respect to wages, hours and other terms and conditions of employment.*" 43 P.S. § 1101.701 (emphasis added). The recitals in the CBA also recognize that the Board and the Association have "entered into extended deliberate negotiations concerning wages, hours, and other terms and conditions of employment." CBA, Recitals; R.R. 14a. Here, the new teaching duties assigned to Griev-

ants unquestionably resulted in an increase in their workload and responsibilities. Thus, the arbitrator's finding that the District violated the CBA by effecting unilateral changes in the terms and conditions of Grievants' employment is rationally derived from the provisions of Article II.

■ The District's elimination of the physical education position, however, commands a different result. In this regard, the District relies heavily on Article II(C) of the CBA, which guarantees that the District shall continue to "enjoy all of the rights and privileges granted to [it] under the provisions of [PERA]." CBA, Article II(C); R.R. 15a. Some of the District's rights are set forth in Section 702 of PERA, which states in relevant part as follows:

Public employers shall not be required to bargain over matters of *inherent managerial policy,* which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the *organizational structure and selection and direction of personnel.* Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

Section 702 of PERA, 43 P.S. § 1101.702 (emphasis added). Thus, the District retained its right to make decisions of inherent managerial policy related to the organizational structure and selection and direction of personnel, including the elimination of the physical education position. Moreover, the District did not bargain away its right to exercise such managerial discretion. The CBA does not require the District to maintain a certain complement of teachers or any one type of teacher, including elementary physical education instructors. Insofar as the arbitrator's award ordered the District to reinstate and refill the eliminated position, it was not rationally derived from the CBA; indeed, it conflicted with Article II(C) of the CBA. *See, Rochester Area School District* (upholding vacatur of arbitrator's award that rendered meaningless provisions of CBA which, along with relevant provisions of PERA, expressly preserved school board's right to develop and adopt management policies).

■ The arbitrator next considered Article III(H) of the CBA, which provides as follows:

1) It is agreed that after the Board and/or Administration has determined that a change is to be made in educational textbooks, *educational programs,* educational materials, educational equipment or *curriculum,* teacher committees or teacher administrator committees shall be established by the Board. When such committees are established, the committees shall be made up of teachers who will be affected by the changes.

CBA, Article III(H); R.R. 18a (emphasis added). Applying this provision, the arbitrator found that the District violated the CBA by implementing its changes without convening a teacher-administrator committee. In so finding, the arbitrator rejected the District's argument that its new policy did not represent a change in "educational programs ... or curriculum." Although neither of these terms is defined in the CBA, the arbitrator noted that the physical education class was formerly taught by a specialist, who submitted lesson plans. Grievants were now expected to formulate and submit their own physical education lesson plans. Because physical education is structured in this way, it is, at a minimum, an "educational program" and not

simply "recess" as the District contends. Thus, the arbitrator's finding that the District violated the CBA by failing to convene a teacher-administrator committee was rationally derived from the language in Article III(H).[4]

██ The arbitrator also sustained the Association's grievance under Article VI(P) of the CBA, which provides that "[n]o teacher shall be assigned outside of the scope of his current teaching certificate." CBA, Article VI(P); R.R. 30a. Most significant here was the fact that special education students from outside of Grievants' homeroom classes are now assigned to Grievants for physical education instruction. The arbitrator found that this practice violated Certification and Staffing Policies and Guidelines (CSPG) No. 83 promulgated by the Pennsylvania Department of Education:

*Assignment of Elementary Teachers to Instruct in Specialized Areas*

1. A person holding an Elementary Education certificate may be assigned to instruct in the following specialized subject areas only to those students assigned within his/her self-contained classroom: [5] . . . physical education.

[When the elementary school is organized on a departmental basis by curriculum area and the students from numerous self-contained classrooms are regrouped to constitute a "specialized subject" class, the teacher certificated in Elementary Education is *not* qualified for instructional assignment in: . . . physical education. See CSPG No. 48.].[6]

R.R. 102(a).

The cited regulations indicate that Grievants, who were certified in Elementary Education, were qualified to provide physical education instruction to students in their homerooms but not to the special education students. Thus, the arbitrator's finding that the District violated Article VI(P) was rationally derived from that provision of the CBA.

4. The arbitrator agreed with the District that the committee is intended to facilitate implementation of a decision already made. The language of Article III(H) indicates that the committee is to be formed *"after the Board and/or Administration has determined that a change is to be made* in . . . educational programs . . . [and] shall be made up of teachers *who will be affected* by the changes." CBA, Article III(H); R.R. 18a (emphasis added). The emphasized language indicates that the committee provided a mechanism for members of the bargaining unit to voice their concerns and, presumably, make suggestions about the implementation of a management decision. If the District had convened a teacher-administrator committee Grievants would have had a forum in which to raise their concerns and this entire dispute may have been avoided. Of course, the proverbial horse is already out of the barn, but going forward the District would be well-advised to convene Article III(H) committees in a more timely manner.

5. The Department of Education defines a "self-contained classroom" as "[a]n organizational pattern where students are grouped together and assigned primarily to one teacher who renders instructional services within a curriculum such as elementary education or special education." CSPG Definitions; Association's Brief, Attachment C. Jo Barker, the District's director of elementary and middle school curriculum, testified that all of the District's elementary schools are organized on a self-contained, grade-by-grade basis. N.T. 76; R.R. 72a.

6. CSPG No. 48 provides that "[a] person holding an Elementary Education Certificate . . . [is] qualified to teach . . . Physical Education within a grade-by-grade (K–6) self-contained elementary school organization. However, when elementary students are grouped separately and scheduled for these subjects, a person holding a certificate in the respective specialized area of . . . Physical Education must be so assigned." R.R. 101a.

 Finally, with respect to his award of back-pay to Grievants, the arbitrator determined that "[i]nasmuch as the workload and responsibility of [Grievants] was increased, depriving them of a professional advantage, they shall be compensated at their contractual hourly rate for the time they spent teaching physical education." Arbitrator's Decision at 13; R.R. 217a. There can be no dispute that obligating Grievants to prepare lesson plans for and to supervise the playing of, *inter alia*, red rover, increased their workload and responsibilities.[7] Teachers in the District's other twelve elementary schools with a dedicated physical education instructor did not bear these responsibilities. Thus, Grievants were treated differently from their counterparts at the other schools and the arbitrator's finding that they were deprived of a professional advantage is rationally derived from Article XIII(G)(1) of the CBA:

> If any teacher for whom a grievance is sustained shall be ... found to have been improperly deprived of any professional compensation or advantage, the same or its equivalent in money shall be paid to him/her.

CBA, Article XIII(G)(1); R.R. 49a.

In sum, we find that insofar as the arbitrator ordered the District to restore and fill the physical education position his award did not draw its essence from the CBA. The District expressly reserved its right to make inherently managerial decisions, including selection and direction of personnel, by virtue of Article II(C) of the CBA and Section 702 of PERA. The arbitrator's award of back-pay to Grievants for the time they spent teaching physical education was, however, rationally derived from the CBA. Accordingly, the order of the trial court vacating the arbitration award is affirmed in part and reversed in part. The matter is remanded for partial reinstatement of the arbitration award in accordance with this opinion.[8]

## ORDER

AND NOW, this 28th day of April, 2005, the order of the Court of Common Pleas of Erie County in the above-captioned matter, dated November 26, 2003, is affirmed in part and reversed in part. The matter is remanded for partial reinstatement of the arbitrator's award dated September 16, 2002, in accordance with the foregoing opinion.

---

7. However, the increase in workload occasioned by planning and supervising a weekly physical education class consisting of dodge ball, red rover, tag and basketball cannot be great. Although to this Judge the additional task sounds more delightful than onerous, it is recognized one person's delight is another's drudgery.

8. *See Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 99 Pa.Cmwlth. 641, 513 A.2d 1125, 1128 (1986) ("Where part of an [arbitration] award is separable from, and not dependent upon, the invalid part of the award, the valid portion of the award may be affirmed.").