# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State System of
Higher Education,
                Petitioner

          v.

Association of Pennsylvania State
College and University Faculties,
                Respondent

:
:
:
:
:
:
:
:
:
:
:

No. 154 C.D. 2023
Argued: September 11, 2023

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                   **HONORABLE MICHAEL H. WOJCIK,** Judge
                   **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: September 29, 2023**

Before the Court is the Petition for Review (Petition) of the January 23, 2023 Arbitration Opinion and Award (Award) filed by Petitioner Pennsylvania State System of Higher Education (PASSHE), which: sustained the grievance filed by Respondent Association of Pennsylvania State College and University Faculties (APSCUF) on behalf of faculty members who had been retrenched (laid off) by PASSHE universities at the end of the 2021 and 2022 academic years (AY) (the Grievance); ordered the parties to engage in additional "meet and discuss" (meet and discuss) pertaining to possible future retrenchments; and ordered reinstatement and backpay for "improperly retrenched" faculty members. At issue before the

Arbitrator was whether PASSHE had violated Article 29 of the parties' Collective Bargaining Agreement (CBA) when it failed to meet and discuss in good faith prior to and following PASSHE Chancellor Daniel Greenstein's (Chancellor Greenstein) issuance of a mandate to reduce the faculty workforce and, if so, what appropriate remedy should be awarded. Presently, PASSHE contends that the portion of the Award ordering reinstatement of retrenched faculty members should be reversed as it is not rationally derived from the language of Subsection R of Article 29 (Article 29.R) of the CBA, which limits an arbitrator's remedy upon finding a violation of the CBA's meet and discuss provisions to ordering additional meet and discuss between the parties. Applying the applicable and deferential standard of review related to arbitration awards, we conclude that portion of the Award finding that PASSHE violated Article 29 of the CBA when it failed to meet and discuss in good faith and ordering immediate additional meet and discuss to discuss future possible retrenchments scheduled for the end the 2023 and 2024 school years and beyond, draws its essence from the CBA. However, because we further find that portion of the Award ordering reinstatement with full back pay, benefits, and seniority of those faculty members who were retrenched at the end of the 2021 or 2022 school years as a remedy for a meet and discuss violation does not draw its essence from the CBA, we affirm in part, reverse in part, and remand for further proceedings.

## I.    BACKGROUND[1]

### A.    *The CBA*

PASSHE administers the Commonwealth-wide system of public universities, and APSCUF is a labor union representing faculty at those universities. For decades, APSCUF and PASSHE have been parties to CBAs pertaining to the faculty employed at all State System universities. The parties' CBA at issue here was effective from July 1, 2019, through June 30, 2023. (Joint Exhibit 1, Reproduced Record (R.R.) at 1294a-1495a.) The CBA recognizes that the decision to retrench, or lay off, faculty is a managerial prerogative of PASSHE universities.

Article 10.B[2] of the CBA incorporates the management rights provision of Section 702 of the Pennsylvania Employe Relations Act (PERA), 43 P.S. § 1101.702,[3] which excuses employers from bargaining over "matters of inherent

---

[1] Because this is an appeal from an arbitration award under the Pennsylvania Employe Relations Act (PERA), sometimes referred to as Act 195, Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. §§ 1101.101-1101.2301, the facts are derived from the Award. *Rose Tree Media Secretaries & Educ. Support Pers. Ass'n v. Rose Tree Media Sch. Dist.*, 136 A.3d 1069, 1078-1079 (Pa. Cmwlth. 2016).

[2] Stating:

> As provided by [PERA] (Section 702), matters of inherent managerial policy are reserved exclusively to [PASSHE]. These "include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer [PASSHE], standards of services, its overall budget, utilization of technology, the organizational structure[,] and selection and direction of personnel."

(R.R. at 1319a.)

[3] Entitled "Matters not subject to bargaining," this provision states:

> Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology the organizational structure and selection and direction of personnel. Public employers, however, shall be

**(Footnote continued on next page…)**

managerial policy," but requires management to meet and discuss regarding such matters if they affect wages, hours, or conditions of employment. (R.R. at 1319a.) Article 29 of the CBA addresses retrenchment. Specifically, Article 29.A.2 of the CBA provides, in relevant part:

> [PASSHE] shall meet and discuss with APSCUF or its designee regarding changes in finances, program curtailment, elimination of courses, or the elimination of duties or services provided by FACULTY whose basic responsibilities lie outside the classroom, which may lead to retrenchment, and thereby impact wages, hours[,] and terms and conditions of employment, as required by Section 702 of [PERA]. In connection with such duty to meet and discuss, accurate information, statistics[,] or financial data related to any such proposed change shall be made available to both [s]tate and [l]ocal APSCUF as well as to the affected University and [PASSHE], so that all parties are prepared to engage in a discussion of the relevant issues.

(*Id*. at 1400a.) In addition, Article 29.N.1 states:

> Nothing contained within this Article shall be construed as requiring a University to retain more ACADEMIC FACULTY MEMBERS[4] in a department or program than the President deems to be needed in that department or unit.

---

required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

43 P.S. § 1101.702.

[4] The Preamble of the CBA defines "Academic Faculty" as

[t]he bargaining unit consisting of department chairpersons, full-time teaching faculty including librarians with faculty status, part-time teaching faculty, librarians without faculty status and faculty members whose basic responsibilities lie outside of the classroom setting who have, by certification of the Pennsylvania Labor Relations Board (PLRB), been designated as ACADEMIC FACULTY (PERA-R-775-C).

(R.R. at 1298a.)

4

(*Id*. at 1405a.)  At issue herein, Article 29.R of the CBA addresses the scope of an arbitrator's remedies and provides:

> If an arbitrator should find that the meet and discuss requirements of this Article have been violated by management, the arbitrator's remedy shall be limited to ordering additional meet and discuss between the parties, and the arbitrator may not insert themself into that process.  If an arbitrator should find that a FACULTY MEMBER was improperly retrenched, the arbitrator's remedy shall be limited to determining whether or not reinstatement is appropriate and whether or not full or partial back pay, seniority[,] and fringe benefits should be awarded.

(*Id*. at 1406a.)

### B.  *The Grievance*

APSCUF filed the Grievance on September 8, 2020. (*Id*. at 1498a.)  The Grievance states that on April 13, 2020, for financial reasons and in an effort to address the effects of the COVID-19 pandemic on system funding, Chancellor Greenstein emailed officers at PASSHE universities and instructed them to implement balanced operating budgets to reduce student/faculty ratios by the 2021-22 AY to match the ratio for each university that existed in the 2010-11 AY. (*Id*. at 1500a.) APSCUF asserted, *inter alia*, that by directing this staffing reduction, which would necessarily require retrenchment of faculty, PASSHE violated the meet and discuss provision of Article 29 of the CBA. (*Id.*)  As remedies, APSCUF sought both additional meet and discuss and reinstatement with benefits for employees affected by PASSHE's failure to meet and discuss the retrenchment prior to ordering the reduced ratios as required under Article 29. (*Id.*)

5

## C.     *The Arbitrator's Decision*

The Arbitrator defined the issue to be decided as whether "[PASSHE] violate[d] the [CBA], Article 29, when it failed to meet and discuss in good faith before and after [] Chancellor [Greenstein] issued a mandate to reduce the faculty workforce [and] [i]f so, what shall be the remedy[.]"  (Award at 1.)

The Arbitrator held hearings over the course of 8 days which spanned 9 months, following which she issued the 39-page Award on January 23, 2023, sustaining APSCUF's Grievance.  The Arbitrator summarized the history leading to the retrenchment of faculty as follows.  Prior to the COVID-19 pandemic in October 2019, during which time the parties had been engaged in labor negotiations over the CBA, the Office of the Chancellor issued a memo seeking to "interpret and clarify the policy on Financial Sustainability for State System Universities" but made no mention of a plan to issue retrenchment letters.  (Award at 15-16.)  By November 2019, adverse financial health ratings had been assigned to approximately 10 of the 14 state universities.  In December 2019, the parties executed the current version of the CBA,[5] at which time they discussed concerns about the system's financial stability, but they did not discuss or propose retrenchment to address the problem. (*Id.* at 12-17.)  Each university was directed to create a financial sustainability plan by January 2020, and despite their knowledge of the severity of the financial situation, none of the universities proposed retrenchment as a cost-saving measure at that time.  (*Id.* at 17-18.)  Upon review of the universities' respective plans, Chancellor Greenstein issued a February 13, 2020 memorandum to PASSHE's

---

[5] The parties' prior CBA had expired on June 30, 2018, and, after negotiating a one-year extension, they executed the current CBA on December 11, 2019, which covered the period of July 1, 2019, to June 30, 2023.  (Award at 12.)

6

Executive Leadership Group (ELG).[6]  In the memorandum, Chancellor Greenstein indicated that "challenges were already severe" and "unprecedented measures" would need to be taken.  (*Id*. at 19.).  He suggested "several immediate actions" to avoid the need for retrenchment and encouraged universities to consult with unions to develop further financial plans.  (*Id*. at 18, 20.)  However, Chancellor Greenstein failed to share the decisions, discussions, or recommendations related to these adverse financial ratings with APSCUF.  (*Id*. at 22, 23.)

In his March 27, 2020 memorandum to the ELG, after the onset of the COVID-19 pandemic exacerbated the already difficult financial situation, Chancellor Greenstein urged "unprecedented measures" to rapidly align university expenditures with enrollments.  (*Id*. at 19-20.)  As a result, on April 13, 2020, without any previous explicit discussion of retrenchment, Chancellor Greenstein issued a directive to university presidents that all system universities must reduce student/faculty ratios to past (2010-11 AY) levels by the 2021-22 AY.  (*Id*. at 24-26.)  PASSHE did not expressly raise the prospect of retrenchment with APSCUF until April 24, 2020, when a meet and discuss agenda included discussion of retrenchment.  (*Id*. at 24.)  Chancellor Greenstein's April 13, 2020 directive was the first time in which any university had been told to reach a student/faculty ratio as part of the budgeting procedure, which would require retrenchment, (*id.* at 24-25), and the fact that this was the only means mentioned to achieve financial health hampered the meet and discuss process required by Article 29, (*id.* at 35-36).

In determining the requirements of the CBA's meet and discuss provisions, which the Arbitrator viewed as "a problem-solving mechanism" the objective of which "is to share information" regarding potential alternative solutions to

_____

[6] The ELG is comprised of system university presidents and PASSHE's Chancellor. (Award at 14 n.5.)

retrenching, the Arbitrator looked to previous arbitrators' interpretations of the term as it has been used in past CBAs, which this Court has held are appropriately considered during arbitration.[7] (*Id.* at 10-11.) Reviewing those prior decisions, the Arbitrator noted three general imperatives arose therefrom: "1. meet and discuss is a problem-solving mechanism; 2. early notification of possible retrenchment before retrenchment is final is key to success[;] and 3. meaningful dialogue including an exchange of ideas, not to be ignored." (*Id.* at 12.) The Arbitrator was aware that while meet and discuss requires meaningful, pre-decision dialogue, it does not mean the parties will agree on a decision to the problem. (*Id.*) Informed by the parties' history and testimony presented at the hearings, the Arbitrator determined that PASSHE had not provided early notification that retrenchment of faculty was being considered, even though it was clearly aware of the need for "unprecedented" reforms, possibly including retrenchment, as early as the fall of 2019, months before the COVID-19 pandemic began. (*Id.* at 19, 21, 36.) The Arbitrator opined that if the parties had begun to meet and discuss in the fall of 2019, although not required to do so under the CBA, some of the conflicts which followed may have been obviated. (*Id.* at 23-24).

The Arbitrator stated that "[m]eet and discuss has to mean something. It had to be included [in the CBA] for a reason. Parties do not include meaningless language in a contract." (*Id.* at 35.) The Arbitrator characterized the April 13, 2020, retrenchment directive as a "decide and then meet" rather than a meet and discuss, because the testimony established "the student/faculty ratio was [PASSHE's] singular goal." (*Id.* at 32, 36.) According to the Arbitrator, the dialogue prior to retrenchment

---

[7] *See Sch. Dist. of Phila. v. Phila. Fed'n of Tchrs.*, 651 A.2d 1152, 1156 (Pa. Cmwlth. 1994).

was not constructive. Synonyms of constructive are productive, helpful, useful, beneficial, practical, effective, valuable[,] and positive. However, the record of the hearing established that none of the dialogue could be characterized by any of these synonyms. Not that the parties had to come to an agreement but at least there had to have been constructive conversation and discussion before decisions were made to issue letters of retrenchment.

(*Id.* at 31.)

Acknowledging that nothing prohibited PASSHE from utilizing the student/faculty ratio as **a** means to attain financial stability, the Arbitrator found that because PASSHE had decided that reducing the faculty/student ratio as **the only** cost-saving measure prior to any discussion of retrenchment, any later discussion was not meaningful because it occurred after a final decision and directive were issued. (*Id.* at 34, 37.) The Arbitrator concluded this violated Article 29 of the CBA and the meet and discuss requirement in Section 702 of PERA. (*Id.* at 38.)

Having found that PASSHE's conduct violated Article 29, the Arbitrator considered what remedy to award. The Arbitrator recognized that her power under Article 29.R of the CBA is "very limited." She imposed two remedies, as follows:

2. Additional meet and discuss shall be held immediately to discuss possible retrenchments scheduled for the end of the upcoming school years of 2023, 2024[,] and beyond.

3. Those faculty members, who were improperly retrenched at the end of the 2021 or 2022 school years due to the violation of Article 29, shall be reinstated and made whole for lost wages, seniority[,] and fringe benefits.

(*Id.* at 39.)

*D.     PASSHE's Appeal*

By letter of February 13, 2023, PASSHE requested that the Arbitrator rescind the reinstatement requirement or, alternatively, stay that remedy pending appeal. (R.R. at 2704a-07a.)  The Arbitrator denied PASSHE's request on February 16, 2023, noting that Article 5.D of the CBA states that an arbitrator's decision is final and binding.  (*Id.* at 1305a.)  PASSHE timely filed the instant Petition on February 21, 2023, challenging the Award.  On March 6, 2023, PASSHE filed an Application for Stay Pending Petition for Review (Application for Stay), and APSCUF filed an Answer thereto.  This Court heard oral argument on the Application for Stay in April 2023, and in a May 9, 2023, Opinion and Order, the Court granted PASSHE's Application for Stay, entered a supersedeas as to the implementation of paragraph 3 of the Award pertaining to reinstatement of backpay for retrenched faculty, which was necessary to preserve the Court's ability to decide the issues on appeal, and ordered expedited consideration of PASSHE's appeal.  *Pa. State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Facs*. (Pa. Cmwlth., No. 154 C.D. 2023, filed May 9, 2023) (Cohn Jubelirer, P.J., single judge op.).[8]  The Court observed that a supersedeas was necessary at that juncture to prevent irreparable harm to PASSHE, which would have been "deprived of appellate review of an adverse determination," for "the CBA's retrenchment provisions create a scenario where, once the Award is effectuated, appellate review of the Award becomes impossible [and a]ny decision on appeal would be merely advisory."  (*Id.* at 12.)  The Court further determined that, because "the public interest favors effective appellate review of arbitrators' awards," a stay pending appeal on the merits furthered that public interest, but the

_____

[8] On June 7, 2023, APSCUF filed an Application for Review of Commonwealth Court Supersedeas Order Dated May 9, 2023, with the Pennsylvania Supreme Court.  To date, no action has been taken on that application.

10

denial of a stay entirely foreclosed such review and, therefore, would be detrimental to the public interest. *Id.* Oral argument was held on the Petition on September 11, 2023, and the matter is now ripe for our review.

## II. DISCUSSION

On appeal, PASSHE argues that the portion of the Award granting reinstatement and backpay to retrenched faculty must be vacated as it does not meet the second prong of the "essence test," which requires that an award be rationally derived from the CBA, because the first sentence of Article 29.R limited the Arbitrator's remedy after finding a violation of the CBA's meet and discuss provisions to "ordering additional meet and discuss between the parties." (R.R. at 1406a.) Therefore, according to PASSHE, paragraph 3 of the Award, which orders global reinstatement of all retrenched faculty, lacks foundation in the CBA, impermissibly ignores its plain terms, and adds terms and provisions thereto. PASSHE further asserts that the reinstatement paragraph of the Award must be vacated because it violates established public policy expressed in Section 702 of PERA in that it infringes on PASSHE's managerial authority over decisions pertaining to its workforce. (PASSHE's Br. at 5.)

### A. *The Essence Test*

This Court's scope and standard of review of a grievance arbitration award arising under PERA are limited, for in reviewing an arbitration award, we must apply the highly deferential two-prong "essence test." *Chambersburg Area Sch. Dist. v. Chambersburg Educ. Ass'n (Pro.)*, 120 A.3d 407, 412 (Pa. Cmwlth. 2015). In *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA,* 939

11

A.2d 855 (Pa. 2007), the Pennsylvania Supreme Court explained the history of and defined the essence test as follows:

> Acknowledging the value of limited judicial review and the potential injurious nature of a broad scope of judicial review which would undermine the arbitration process, shortly after PERA's enactment, our Court in *Community College of Beaver County v. Community College of Beaver County, Society of Faculty (PSEA/NEA),* . . . 375 A.2d 1267 ([Pa.] 1977), addressed the proper standard of review by which to review a grievance arbitrator's award. The standard is one characterized by great deference. The arbitrator's award must be "respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . .'" *Id.* at 1275 (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)).
>
> In articulating the proper standard of review under PERA, our Court determined that the standard of review by the judiciary of a grievance arbitrator's award was consistent with federal case law addressing the same issue. As stated by the United States Supreme Court in *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 . . . (1960):
>
>> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet **his award is legitimate only so long as it draws its essence from the collective bargaining agreement.**
>
> *Id.* at 596 . . . .

*Westmoreland Intermediate Unit #7*, 939 A.2d at 862-63 (emphasis in original).

In applying the essence test, "[f]irst, we decide whether the issue is encompassed by the collective bargaining agreement. Second, if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement, it will be sustained." *Slippery Rock Univ. of Pa. v. Ass'n of Pa. State Coll. & Univ.*

12

*Fac.*, 241 A.3d 1278, 1284 (Pa. Cmwlth. 2020). The first prong of the essence test "requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute" and where a determination is made "that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court." *York Cnty. Prison v. Teamsters Loc. Union No. 776*, 245 A.3d 399, 405 (Pa. Cmwlth. 2021) (citations omitted), *appeal denied*, 278 A.3d 856 (Pa. 2022). Thus, the essence test does not permit us "to vacate an arbitrator's award even if we disagree with the arbitrator's interpretation of the [collective bargaining agreement]." *Am. Fed. of State, Cnty., & Mun. Emps., Dist. Council 87 v. County of Lackawanna*, 102 A.3d 1285, 1290 (Pa. Cmwlth. 2014). The Pennsylvania Supreme Court has deemed this high degree of deference to be appropriate with regard to collective bargaining agreements, for "if an arbitrator's interpretation is contrary to one party's understanding of the agreement . . . the agreement can be renegotiated to reflect the 'true' intention of the party the next time the parties negotiate their [collective bargaining agreement]." *Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Personnel Ass'n,* 210 A.3d 993, 1007 (Pa. 2019) (citation omitted).

### 1. Parties' Arguments

PASSHE states that Section 702 of PERA does not require parties to bargain over the implementation of policies designed to address a managerial matter like the size of the workforce or whether faculty retrenchment is necessary, but rather requires them to meet and discuss on topics which could affect wages, terms, and conditions of employment. (PASSHE's Br. at 23-25.) PASSHE does not dispute the Arbitrator's ability under Article 29.R of the CBA to order the parties to engage in additional meet and discuss for future years as a remedy for the Grievance. (*Id.*

13

at 30.) Instead, PASSHE argues that paragraph 3 of the Award, ordering reinstatement for all retrenched faculty with backpay, as a group, fails under the second prong of the "essence test" because Article 29.R expressly limits the Arbitrator's remedial authority for a meet and discuss violation. According to PASSHE, the Arbitrator made no findings as to how any faculty member was improperly retrenched and the Grievance did not involve any individual faculty member's grievance. (*Id.* at 21-22, 30-32.) The only finding by the Arbitrator was the violation of the meet and discuss provision. However, the CBA provides that the remedy for a meet and discuss violation is limited to ordering additional meet and discuss. PASSHE cites *Association of Pennsylvania State College and University Faculties v. State System of Higher Education (Edinboro University)*, 35 PPER 41, (Pa. Lab. Rels. Bd., filed April 9, 2004), 2004 WL 6017685, for the proposition that the CBA's limitation on the Arbitrator's remedial authority is consistent with the remedy the Pennsylvania Labor Relations Board (PLRB) will provide upon finding management violated the meet and discuss provisions of Section 702 of PERA.

According to PASSHE, no issue could have been presented to the Arbitrator for decision, and the fact that APSCUF later filed separate grievances to challenge the retrenchment of individual faculty members at various universities illustrates that the Grievance herein pertained to the meet and discuss violation alone, which limited the remedy available to the Arbitrator to the first sentence of Article 29.R. (PASSHE's Br. at 32-34.) PASSHE posits that, in ordering the reinstatement of retrenched faculty, the Arbitrator exceeded her remedial authority and "rendered the first sentence of Article 29[.]R completely meaningless." (*Id*. at 36.) According to PASSHE, this Court's decision in *School District of the City of Erie v. Erie*

14

*Education Association*, 873 A.2d 73 (Pa. Cmwlth. 2005), is dispositive herein, and it urges this Court to find that paragraph 3 of the Award did not draw its essence from the CBA's language and, therefore, vacate that portion of the Award ordering reinstatement with benefits. (PASSHE's Br. at 36-38.)

APSCUF "does not dispute that Article 29 designates [PASSHE] and the universities as the decision-makers. Nor does APSCUF dispute that the Award references the managerial prerogative and/or the difference between an obligation to meet and discuss an obligation to bargain." (APSCUF's Br. at 23.) However, APSCUF argues that the plain language of Article 29.R authorizes an arbitrator to reinstate faculty members where, as here, the arbitrator finds that they were improperly retrenched **before** the parties had engaged, as negotiated, in a **constructive** process to find alternatives, in violation of the meet and discuss provision of the CBA. (*Id*. at 11-12, 23-24, 30.) APSCUF maintains the Arbitrator clearly demonstrated an awareness of the contractual language by acknowledging her discretion to impose a remedy for a violation of the meet and discuss provision was limited, and by imposing only those remedies authorized in Article 29.R upon finding both that PASSHE failed to meet and discuss in good faith and that faculty had been improperly retrenched. (*Id*. at 16, 18-19.) Thus, APSCUF argues, the Award, and paragraph 3 in particular, has its essence in the CBA's language.

APSCUF also asserts that Chancellor Greenstein's directive on April 13, 2020, requiring PASSHE universities to achieve a student/faculty ratio akin to that of 2010-11 AY was done without regard to the need to explore other alternatives with the goal of avoiding retrenchment, as is required under the terms of Article 29 of the CBA. Thus, APSCUF maintains the Arbitrator was within her authority to find that PASSHE violated its obligation to meet and discuss the possible

15

retrenchment, for "PASSHE is not free to decide to retrench first, then me[e]t and discuss later." (*Id.* at 20-22.)

### 2. Application of the Essence Test

The first prong of the essence test is whether the terms of the CBA encompass the subject matter of the dispute. It is undisputed that the subject matter of the dispute, as defined by the Arbitrator as whether PASSHE violated Article 29 of the CBA when it failed to meet and discuss in good faith and if so, what the remedy should be, is encompassed by the CBA. Because Article 29 pertains to meet and discuss, the first prong of the essence test is met, and we next turn to the second prong. *York Cnty.*, 245 A.3d at 405.

It is the second prong of the essence test that is at issue here. This prong requires that we "ask whether the award itself can rationally be derived from the [collective bargaining agreement]" and, in doing so, remain mindful that "the parties to a [collective bargaining agreement] have agreed to allow the arbitrator to give meaning to their agreement and fashion appropriate remedies for 'unforeseeable contingencies.'" *Millcreek*, 210 A.3d at 1006 (citation omitted).

> Accordingly, even though an arbitrator is not permitted to ignore the [collective bargaining agreement's] plain language in fashioning an award, the arbitrator's understanding of the plain language must prevail. A reviewing court should not reject an award on the ground that the arbitrator misread the contract. The law is clear that an arbitrator's award must draw its essence from the [collective bargaining agreement]. It need not [] reflect the narrowest possible reading of the [collective bargaining agreement's] plain language. . . . Even if a court's interpretation of the [collective bargaining agreement] is entirely different than the arbitrator's, the award must be upheld so long as it rationally derives from the [collective bargaining agreement]. . . .

*Id.* (citations and internal quotation marks omitted).

16

When analyzing the second prong of the essence test, we are mindful that the Award contains two, distinct remedies for PASSHE's violation of the meet and discuss requirements of Article 29. The Arbitrator ordered immediate additional meet and discuss by the parties, a remedy about which the parties do not disagree. It is the second remedy which is disputed: the order for PASSHE to reinstate all improperly retrenched faculty members and to make them whole with salary and benefits.

Article 29.R. reads:

> If an arbitrator should find that the meet and discuss requirements of this Article have been violated by management, the arbitrator's remedy shall be limited to ordering additional meet and discuss between the parties, and the arbitrator may not insert themselves into that process. If an arbitrator should find that a FACULTY MEMBER was improperly retrenched, the arbitrator's remedy shall be limited to determining whether or not reinstatement is appropriate and whether or not full or partial back pay, seniority[,] and fringe benefits should be awarded.

(R.R. at 1406a.)

In the opening sentences of the "Opinion" portion of her analysis, the Arbitrator acknowledged "[t]here is no doubt that management has the right to decide the size of its workforce[,]" and "public employers are not required to bargain over matters of inherent managerial policy." (Award at 7-8.) The Arbitrator stated that "[i]f this arbitration were solely about management rights to operate the business and the direction of the faculty, there would be no issue to address, as these rights are reserved." (*Id*. at 8.) However, the Arbitrator saw the instant case as concerning the meet and discuss requirement, not bargaining over personnel. (*Id*. at 8.) Quoting prior arbitrators' decisions submitted by the parties, the Arbitrator stressed that these parties have arbitrated the issue of meet and discuss numerous times in the past and

17

were aware that it functions as a "problem-solving mechanism" requiring "early notification of retrenchment [to] allow[] the parties to begin to engage in meaningful dialogue." (*Id*. at 10.)

As the Arbitrator repeatedly acknowledged, PASSHE did not bargain away its right to make decisions of inherent managerial policy, like those related to maintaining a certain student/faculty ratio. The CBA also does not prohibit PASSHE from deciding when it is necessary to retrench faculty, but rather, Article 29.B.2 empowers it to do so "[w]hen in the opinion of [PASSHE] retrenchment becomes necessary and it cannot be accomplished totally by attrition, APSCUF and the affected FACULTY MEMBERS **shall be notified prior to implementation** . . . and **retrenchment shall be made as circumstances require**. . . ." (R.R. at 1400a (emphasis added, capitalization in original).) Moreover, Article 29.N.1 states that "**[n]othing contained within this Article shall be construed as requiring a University to retain more ACADEMIC FACULTY MEMBERS in a department or program than the President deems to be needed in that department or unit**." (*Id.* at 1405a (emphasis added, capitalization in original).) As the Arbitrator stated, "[w]hile [APSCUF] was clearly frustrated, it was management's right in the final analysis to make the ultimate decision regarding retrenchment. **Agreement was not the standard in Article 29**, and not the standard set forth in Section 702 of [PERA]." (Award at 33 (emphasis added).)

It appears that, in ordering a blanket reinstatement of faculty in the PASSHE university system, the Arbitrator exceeded her authority by essentially requiring those universities to retain more academic faculty than their respective presidents deem to be needed and requiring the parties to negotiate and agree about retrenchment. Moreover, we note that, although in the context of its public policy

argument, APSCUF recognizes that "reinstatement was **not a remedy for the 'meet and discuss' violation** [but] [r]ather, the Arbitrator **awarded reinstatement to remedy the improper retrenchment of faculty**." (APSCUF's Br. at 27 (emphasis added).) This further clarifies that the reinstatement award was not for the meet and discuss violation; yet, per the Arbitrator's statement of the issue, that was the only challenge and violation before her.

In this regard, we agree with PASSHE that the Proposed Decision and Order in *Edinboro University* is instructive herein. There, in ordering only additional meet and discuss upon finding a meet and discuss violation, the PLRB hearing examiner explained that Section 702 of PERA requires public employers to meet and discuss "managerial policy matters affecting wages, hours[,] and terms and conditions of employment" when requested by the exclusive representative. *Edinboro Univ.*, 35 PPER 41, 2004 WL 6017685, at "Meaning" Section. The issue therein pertained to the elimination of sports programs without any effort to meet and discuss. Because this elimination resulted in the loss of jobs, a decision affecting wages, hours, and conditions, the hearing examiner found the meet and discuss requirement applied. In doing so, the hearing examiner defined the issue as "not whether [the State System of Higher Education (SSHE)] must negotiate over the wage, hour[,] and working condition impact of a managerial decision to eliminate sports programs, but whether SSHE must meet and discuss with APSCUF over the managerial decision itself." *Id*. at "Discussion" Section. The hearing examiner went on to observe that "[t]he cited provision in the [collective bargaining agreement] does not even arguably address APSCUF's statutory right to meet and discuss [the] proposed elimination of sports programs. Therefore, this provision does not support SSHE's claim of a contractual waiver of APSCUF's statutory rights." *Id*. The hearing examiner

19

ordered PASSHE to issue a written offer to meet and discuss with APSCUF, "**its usual and customary remedy for a failure to engage in meet and discuss**." *Id.* at Order ¶ 3.(a) (emphasis added).

Herein, the Arbitrator repeatedly identified the issue to be decided as whether PASSHE violated Article 29's meet and discuss requirements prior to the retrenchment of faculty. After she found such a violation, Article 29.R. clearly authorized the Arbitrator to order, as she did, PASSHE and APSCUF to engage in additional meet and discuss without inserting herself into the process. (Award at 39 ¶ 2.1.) However, insofar as the Award next ordered the reinstatement of all retrenched faculty with full benefits, that portion of the Award does not draw its essence from the CBA. Where the language of a CBA is "clear and unambiguous as a matter of law, a contrary 'interpretation' of its terms cannot be said to rationally or logically be derived from the CBA." *Greater Nanticoke Area Sch. Dist. v. Greater Nanticoke Area Educ. Ass'n*, 760 A.2d 1214, 1220 (Pa. Cmwlth. 2000). By its plain terms, the second sentence of Article 29.R. is triggered when APSCUF files a grievance on behalf of an individual "faculty **member**" claiming that individual had been "**improperly retrenched**." This sentence states that "[i]f an arbitrator should find that **a FACULTY MEMBER** was improperly retrenched, the arbitrator's remedy shall be limited to determining whether or not reinstatement is appropriate and whether or not full or partial back pay, seniority[,] and fringe benefits should be awarded." (R.R. at 1406a (emphasis added, capitalization in original).) The Grievance pertained only to PASSHE's failure to meet and discuss with APSCUF and did not concern any individual grievances arising from retrenchment of individual faculty members at the end of the 2020-21 AY, which were later filed by APSCUF. Thus, although the Arbitrator had the authority to order

20

additional meet and discuss, she lacked the authority to award reinstatement of all faculty for a meet and discuss violation.

In *Edinboro University of Pennsylvania, State System of Higher Education v. Association of Pennsylvania State College and University Faculties*, 128 A.3d 322 (Pa. Cmwlth. 2015), this Court considered an arbitration award that sustained an assistant professor's grievance challenging the denial of her tenure and directed the university to retroactively grant the assistant professor tenure. On appeal, the university did not dispute that the terms of the collective bargaining agreement had been violated or challenge the arbitrator's authority to review the university president's tenure decision and allow a grievant to reapply for tenure if the correct criterial were not applied; it essentially challenged the award of tenure as not being within an arbitrator's authority under the collective bargaining agreement. 128 A.3d at 327, 329. Applying the essence test and relevant authority, we concluded that the arbitrator had not exceeded her authority in reviewing the denial of tenure and in concluding that the correct criterion for granting tenure had not been applied, but the arbitrator's actual award of tenure outright was not rationally derived from the collective bargaining agreement. *Id*. at 329-330. We held that "after concluding that the [collective bargaining agreement] had been violated, the [a]rbitrator was permitted only to reinstate [the assistant professor] to probationary faculty member status and allow her to reapply for tenure." *Id*. at 330.

We reach a result here similar to that reached in *Edinboro University of Pennsylvania*, and in *School District of City of Erie*. In *Erie*, this Court held that an arbitration award directing the school district to pay teachers for additional work assigned to them after a physical education position had been eliminated was rationally derived from the parties' collective bargaining agreement and, therefore,

21

was enforceable. 873 A.2d at 81. However, we rejected the part of the award that directed the school district to reinstate and refill the eliminated position because the school district's creation of positions and the assignment of job duties associated with them were not subject to bargaining, as the school district never bargained away its right to exercise managerial discretion and the parties' agreement did not mandate things like overall faculty size or particular types of instructors needed in various schools. *Id.* at 79. We held that "[i]nsofar as the arbitrator's award ordered the [d]istrict to reinstate and refill the eliminated position, it was not rationally derived from the [collective bargaining agreement]; indeed, it conflicted with Article II(C) [(involving the preservation of management rights)] of the [collective bargaining agreement]." *Id.* at 79.

Because the Arbitrator's award of reinstatement of faculty with lost wages, seniority, and fringe benefits was not rationally derived from the CBA, we find the second prong of the essence test is not satisfied with regard to that portion of the Award. *Millcreek*, 210 A.3d at 1002.[9]

## III.   CONCLUSION

Applying the applicable, highly deferential standard of review to grievance awards, we hold that paragraph 2 of the Award providing for additional meet and discuss draws its essence from the CBA, while paragraph 3 directing reinstatement of faculty with benefits does not draw its essence from the CBA. Therefore, we affirm that portion of the Award ordering additional meet and discuss and reverse that portion of the Award ordering reinstatement of faculty retrenched at the end of

_____

[9] Because we find that the second prong of the essence test is not satisfied with regard to the Arbitrator ordering reinstatement of retrenched faculty as a remedy for a meet and discuss violation, we need not resolve PASSHE's argument that this remedy also violates the public policy exception.

the 2021 or 2022 AY with benefits due to the violation of Article 29. The matter is remanded for further proceedings.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State System of      :
Higher Education,      :
              Petitioner      :
     :
            v.      :    No. 154 C.D. 2023
     :
Association of Pennsylvania State      :
College and University Faculties,      :
              Respondent      :

## O R D E R

**NOW**, September 29, 2023, the Arbitration Opinion and Award of January 23, 2023, entered in the above-captioned matter, is **AFFIRMED IN PART and REVERSED IN PART**. The matter is **REMANDED** for further proceedings. Jurisdiction is relinquished.

_____
**RENÉE COHN JUBELIRER,** President Judge